MACHINISTS' NATIONAL BANK *vs.* JOSHUA DEAN, 2D, & others.

Bristol. Oct. 25, 1877. — Feb. 27, 1878. LORD & SOULE, JJ., absent.

A plaintiff, who joins issue upon an answer in abatement, which was filed too late and improperly joined to an answer on the merits, is not entitled, after the case is opened to the jury, but before any evidence is offered, to go to the jury on such issue, and, if the issue is found against the defendant, to final judgment thereon, but the presiding judge, upon the defendant's waiving that part of his answer, may direct the trial to proceed.

On the issue whether A. and B. were partners, in 1875, in an unincorporated lumber manufacturing company, established in 1865, there was evidence that the articles of association of the company required the election of a president, clerk, treasurer and agent, the two latter being required to give bonds to the president for the faithful discharge of their duties, and to render accounts semiannually; that the business of the company was required to be and was conducted by the treasurer and agent, who received salaries and devoted their entire time to it; that meetings of the members were to be called by written notice from the clerk; that meetings of the company were regularly called, and the records of the same kept by the clerk; that any member could sell his interest to a stranger, such sale carrying with it the right to membership and to a participation in the future profits of the business; that A. was regularly admitted a member; that the treasurer, who was a

member of the company, died in 1868, and a new treasurer was immediately chosen; that at a subsequent meeting, at which A. was chosen clerk, it was voted that the treasurer continue the business of manufacturing and selling lumber; that A. attended all subsequent meetings, and recorded other votes to hire money and carry on the business, and to empower one of the members to close up the business in the best manner for all concerned; that B., soon after the death of the treasurer, purchased the interest of an original member, agreeing to assume all his liabilities; that B. was subsequently present at a meeting of the company, of which he was notified by the clerk, at which it was voted to raise money to carry on the business; that B. called himself a surviving partner of the deceased treasurer in an answer to a bill in equity brought by the latter's administrator against the other members and the original member whose interest he bought; that B. signed a note with the other members to raise money for the business, and also signed a power of attorney, authorizing the agent to sell real estate for the benefit of the company; and that B. said he would like to have the thing settled, and would pay his proportion if he could find out what it was. *Held*, that the evidence would warrant a finding that A. and B. were partners in the company.

CONTRACT against Joshua Dean, 2d, James E. Vickery, Charles L. Haskins, Jefferson C. Coolidge, Sullivan C. Andrews, Cornelius Wood and John R. Williams, on four promissory notes, dated June 4, 1875, signed " The Dean Lumber Company," payable to the order of Joshua Dean, 2d, and indorsed by him to the plaintiff. Wood and Williams alone defended. At the trial in the Superior Court, *Rockwell*, J., directed a verdict for the plaintiff; both parties alleged exceptions; and the judge reported the case for the consideration of this court. The facts appear in the opinion.

*E. H. Bennett*, for the plaintiff.

*C. A. Reed*, for Williams.

*W. E. Fuller*, for Wood.

COLT, J. The Dean Lumber Company was an unincorporated company established in 1865, under articles of association, which contained, among other things, provisions for the admission of new members, the sale by any old member of his interest, the calling of meetings, and the transaction of the business of the company. The plaintiff alleges that the defendant Wood became a member in 1866, and the defendant Williams in 1868, the latter having then bought out White, an original member. The treasurer and agent, Joseph P. Dean, a member of the company, died in 1868; but a new treasurer and agent was chosen, and the business was continued as before. The members of this association were liable as copartners.

This action is against those persons who, it is alleged, were partners in 1875, at the time when the notes in suit were made. Of these, Wood and Williams alone defend, on the ground that at that time they were not members of the company, and therefore not liable as partners.

This action was entered at June term 1876 of the Superior Court, and, in vacation thereafter, separate answers to the merits were filed by each of the last named defendants, to each of which was added an allegation that one Charles R. Vickery was a partner in the company, and should have been joined as defendant. This was stating a defence which could only be pleaded as matter in abatement, but, as an answer in abatement, it was not filed in season, and was improperly joined with an answer to the merits. The plaintiff, however, filed a replication containing a general denial of the allegations in the answers, with a special denial that Vickery was a partner, and joining issue with the defendants on that fact. After the case was opened to the jury, but before any evidence was offered, the plaintiffs contended that they were entitled to go to the jury on the issue raised by the matter in abatement, and, if that issue was found against the defendants, that judgment thereon should be final. The defendants thereupon waived that part of their answers, and stated that they did not insist on that fact as a defence. The judge declined to rule in the plaintiff's favor, and directed the trial to proceed. In substance, this amounted to giving the defendants leave either to amend their answers by striking out the clauses in question, or to answer over, under the Gen. Sts. *c.* 129, § 40, and is not open to the plaintiff's exception.

The question principally discussed at the argument was whether the evidence reported was sufficient to charge these defendants as partners in the company. Upon that question, the character of the company, the mode of its formation, the nature of its business, and the manner in which it was conducted, must be taken into consideration, as giving significance to the acts and declarations of the parties. The business of the company was that of manufacturing lumber in North Carolina. The articles of association require the election of a president, clerk, treasurer and agent, the two latter being required to give bonds, for the faithful discharge of their duties, to the president, and to render

account semiannually. The business of the company was required to be and was conducted by the treasurer and agent, who received salaries and devoted their entire time to it. Meetings of the members were to be called by written notice from the clerk. The agreement plainly contemplated a change of membership. An original article, requiring that no one should sell his interest without first offering it to the other members, and that no new member should be admitted without the consent of all, was amended so as to allow any member to sell to any outside party, implying that the sale of an interest to a stranger carried with it the right to membership and to a participation in the profits of the future business. The meetings of the association were regularly called, and the records of the same were kept by the clerk.

The company thus created was only a partnership; but it was a partnership which resembled, and was intended to resemble, a corporation in its mode of doing business. The death of any of its members or a change of ownership, without evidence of a purpose to continue the business by each of the surviving partners and the new owners, would indeed terminate all partnership relation and all responsibility for new undertakings; but much less additional evidence would be required, to prove such a purpose than would be necessary in the case of a purchaser of an interest in the property of an ordinary partnership, conducting business in the ordinary way.

As to the defendant Wood, he was regularly admitted a member in 1866; Dean, the treasurer, died in October, 1868; a new treasurer was immediately chosen; and, at a meeting in December following, at which Wood was chosen to and accepted the office of clerk, it was voted that the treasurer continue the business of manufacturing and selling lumber as usual. He attended all subsequent meetings, and recorded other votes to hire money and carry on the business, and to empower one of the members to close up the business in the best manner for all concerned. For all that appears, he is still clerk of the association.

As to the defendant Williams, it appears that he purchased the interest of White, an original owner, in December, 1868, agreeing to assume all his liabilities. He was present at a meeting of the company in 1871, of which he was notified by the

clerk, and at which money was voted to be raised to carry on the business. He called himself surviving partner of Dean in an answer to a bill brought by his administrator against the other members and White, whom he represented by purchase. He was not a member when Dean died, and his statement is not consistent with his present defence. He signed a note with other members to raise money for the business. He signed a power of attorney, authorizing the agent to sell the real estate in North Carolina for the benefit of the concern. And there was evidence that he said he would like to have the thing settled, and would pay his proportion, if he could find out what it was.

There was sufficient evidence in these facts and declarations to authorize a verdict charging these defendants as partners in this company.

As we understand the report, the defendants did not ask to go to the jury, and no exception was taken to the direction given to return a verdict against both defendants. They relied on the absence of any evidence which would justify a verdict, and did not care to go to the jury, if the court should be of opinion that there was such evidence. As we have seen, there was such evidence against both defendants; and there was no error in ordering a verdict for the plaintiff.

*Judgment on the verdict.*